THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
VERNON INGRAM, Defendant-Appellant.

Second District   No. 81—770

Opinion filed May 17, 1983.

G. Joseph Weller, of State Appellate Defender's Office, of Elgin, and Daniel D. Yuhas, of State Appellate Defender's Office, of Springfield, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan (Phyllis J. Perko and Raymond L. Beck, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE NASH delivered the opinion of the court:

After bench trial defendant, Vernon Ingram, was found guilty of murder (Ill. Rev. Stat. 1979, ch. 38, par. 9—1(a)) and thereafter sentenced to 40 years' imprisonment. He appealed, contending he was not proved guilty beyond a reasonable doubt; that his conviction for murder should be reduced to voluntary manslaughter (Ill. Rev. Stat. 1979, ch. 38, pars. 9—2(a), (b)), and that the trial court abused its discretion in imposing sentence.

During an argument between defendant and his girlfriend, Amanda Sledge, on the back porch of the home in which they had been living she, according to defendant, produced a knife and attempted to stab him in the head. Defendant warded off the blow with his hand, sustaining a small cut, and knocked the knife from her hand; he then picked up the knife and applied it to her. Amanda, bleeding from her face, ran down the street and defendant followed. He caught her on the front porch of Reverend Lawrence Stewart's home and stabbed her in the buttocks. She ran into the home with defendant following and Reverend Stewart testified he saw a bloody young woman on the kitchen floor with defendant standing over her holding a knife in his hand. The woman got up and ran into a hallway where she collapsed; defendant followed and again stabbed her a number of times. Defendant then advised Reverend Stewart to call the police and walked outside.

Police officers and paramedics arrived and found Amanda still alive but bleeding profusely, and she died a short time later in a hospital. The pathologist who performed an autopsy testified Amanda had sustained 25 knife wounds of the head, face, neck, chest, buttocks and extremities. The doctor stated death was caused by massive hemorrhaging and by the collapse of a lung which resulted from a knife wound through her chest. The doctor noted that was the most serious injury and the other wounds would not individually have been sufficient to cause death, although, if taken together, the resulting hemorrhaging might cause death if not treated properly.

In statements given to police officers later that night defendant said that he and Amanda had quarrelled on the porch and that while trying to get the knife from her he made a thrust with it, stabbing her in the chest, and then slashed her three times in the face. Defendant stated he also stabbed her in the buttocks on the Stewart porch and then told Reverend Stewart to call the police. When defendant was advised by police officers that Amanda was dead and that he was being charged with murder, he responded, "I'm telling you she is not dead, but she will be dead when I get out of here. I'll get a knife and

I'll show her what being cut up is." Defendant declined to sign a written statement prepared by the officers commenting, "[p]rove it. She is dead, and how is a dead woman gonna talk? It's my word against hers."

Defendant testified at trial he had taken LSD earlier that day and thereafter consumed a quantity of bourbon and beer. He stated that Amanda had also been drinking and that she became violent when she did so, having stabbed him on a previous occasion. Defendant testified that when Amanda attempted to stab him in the head on the porch he blocked the blow with his hand cutting it. He stated they struggled and he knocked the knife to the floor then seized it and swung at her without thinking. Defendant testified he could not be certain whether he stabbed Amanda at that time, but that he was afraid for his life and believed she was trying to kill him. She then ran down the street; he followed and saw blood running from her face, then saw "blackness and red all around" and could remember nothing after that. Defendant testified he had no recollection of making a statement to police officers that night.

Defendant contends first the State failed to prove he was not acting in self-defense when he inflicted the stab wound which caused Amanda Sledge's death. While he agrees that the 24 other wounds he inflicted upon her did not constitute a justifiable use of force, defendant argues it was the first stab wound which was fatal and that injury was inflicted in self-defense.

■ Section 7—1 of the Criminal Code of 1961 provides that a person is justified in the use of force against another

"[W]hen and to the extent that he reasonably believes that such conduct is necessary to defend himself *** against such other's imminent use of unlawful force. However, he is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself ***." (Ill. Rev. Stat. 1981, ch. 38, par. 7—1.)

Self-defense is an affirmative defense (Ill. Rev. Stat. 1981, ch. 38, par. 7—14) and if raised by the evidence imposes the burden on the State to prove beyond a reasonable doubt defendant did not act in self-defense. *People v. Williams* (1974), 57 Ill. 2d 239, 242, 311 N.E.2d 681; *People v. Kyles* (1980), 91 Ill. App. 3d 1019, 1021-22, 415 N.E.2d 499.

■ There was evidence that decedent had a knife and swung it at defendant, cutting his hand. Defendant also testified, however, he disarmed her knocking the knife from her hand to the ground in their struggle on the porch. Defendant then picked up the knife and at-

tacked decedent with it. The evidence disclosed that defendant was 60 pounds heavier and nine inches taller than the female decedent. He initially told the officers he stabbed her in the chest, withdrew the knife and slashed her three times in the face. At trial, however, defendant testified he was uncertain whether he stabbed the victim at all on the porch. Under either version it is apparent defendant's conduct was not justified in these circumstances as necessary self-defense.

■■ ■ A person is not justified in using deadly force against an antagonist after the latter has been disarmed. (*People v. Jordan* (1960), 18 Ill. 2d 489, 495, 165 N.E.2d 296; *People v. Shipp* (1977), 52 Ill. App. 3d 470, 476, 367 N.E.2d 966, *appeal denied* (1978), 67 Ill. 2d 594; *People v. Limas* (1977), 45 Ill. App. 3d 643, 652, 359 N.E.2d 1194.) Defendant's purpose after securing the knife clearly was not directed toward preventing harm to himself, but, instead, to the infliction of injury to Amanda Sledge. The trial court was not required to believe defendant's exculpatory explanation of the occurrence, and his further conduct left little vitality to the self-defense theory advanced. *People v. Adams* (1979), 71 Ill. App. 3d 70, 74, 388 N.E.2d 1326.

We will not disturb a trial court's determination as to whether a killing is justified as necessary self-defense unless under the evidence it is so unreasonable, improbable or unsatisfactory as to raise a reasonable doubt of defendant's guilt. (*People v. Evans* (1981), 87 Ill. 2d 77, 86, 429 N.E.2d 520; *People v. Perez* (1981), 100 Ill. App. 3d 901, 906, 427 N.E.2d 229.) We have no such doubt here.

Defendant has further contended in this connection that the State failed to prove beyond a reasonable doubt the cause of death was *not* the initial stab wound which, he asserts, was inflicted in self-defense, citing *People v. Weinstein* (1966), 35 Ill. 2d 467, 220 N.E.2d 432; *People v. Benson* (1960), 19 Ill. 2d 50, 166 N.E.2d 80; *People v. Brown* (1978), 57 Ill. App. 3d 528, 373 N.E.2d 459. He argues the State has thus failed to prove the death occurred by means of a criminal agency.

■ There isn't any question in this case that defendant inflicted all of the 25 stabbing and cutting wounds sustained by the victim, three of which were in the chest, and that she died as a result of defendant's conduct. In these circumstances it is immaterial whether the fatal wound was inflicted on the porch where the dispute commenced, on Reverend Stewart's porch or in the Stewart home, in each of which locations defendant stabbed Amanda. He at all times in doing so was acting without lawful justification. The State met its burden of proof in that regard and was not required to establish at which point the fatal wound was inflicted.

Defendant next requests that we reduce his conviction for murder to either "unreasonable belief" or "provocation" voluntary manslaughter (Ill. Rev. Stat. 1981, ch. 38, pars. 9—2(a),(b)). See 87 Ill. 2d R. 615(b)(3).

We heretofore concluded defendant was not acting in self-defense when he inflicted the knife wounds upon decedent and reject his argument that the degree of the offense should be reduced because he reasonably believed his conduct was justified. In our view of the evidence, as also determined by the trial court, any necessary self-defense considerations ceased after defendant disarmed the decedent. There is no evidence of conduct thereafter on the part of decedent which could either reasonably or unreasonably give rise to a belief on the part of defendant that deadly force was necessary to prevent injury to himself. *People v. Monigan* (1981), 97 Ill. App. 3d 885, 889, 423 N.E.2d 546; *People v. Perry* (1980), 91 Ill. App. 3d 988, 993, 415 N.E.2d 523, *appeal denied* (1981), 82 Ill. 2d 586; compare *People v. Ellis* (1982), 107 Ill. App. 3d 603, 611, 437 N.E.2d 409.

Defendant's alternate suggestion that he was acting under a sudden and intense passion as a result of serious provocation by Amanda Sledge is contrary to the defenses offered in the trial court. There he argued that he acted in self-defense and also that because of the ingestion of drugs and alcohol he did not know what he was doing when he stabbed her. Defendant has not renewed the latter argument in this court, and we are not persuaded by his present argument.

Voluntary manslaughter has been said to be an acknowledgment by the law of the mitigating effect of human weakness and intense passion in an otherwise unjustified homicide which was committed in a sudden rage or passion engendered by adequate provocation, and not the result of malice conceived before the provocation. (*People v. Leonard* (1980), 83 Ill. 2d 411, 420, 415 N.E.2d 358; *People v. Monigan* (1981), 97 Ill. App. 3d 885, 889, 423 N.E.2d 546.) There was evidence of provocation on the part of Amanda Sledge which, in a jury trial, would be sufficient to require voluntary manslaughter instructions if requested by defendant. (See *People v. Simpson* (1978), 74 Ill. 2d 497, 502-03, 384 N.E.2d 373.) Defendant, however, did not claim in the trial court that he acted under a sudden and intense passion provoked by decedent's conduct; instead, he testified he feared for his life and that his actions were defensive. *People v. Slaughter* (1980), 84 Ill. App. 3d 1103, 1109-10, 405 N.E.2d 1295; *People v. Goolsby* (1979), 70 Ill. App. 3d 832, 837, 388 N.E.2d 894, *cert. denied* (1980), 445 U.S. 952, 63 L. Ed. 2d 788, 100 S. Ct. 1602.

In a bench trial the trial judge must determine the credibility of

the witnesses and the weight to be given to their testimony. (*People v. Woods* (1980), 81 Ill. 2d 537, 542, 410 N.E.2d 866.) The evidence presented in this case was sufficient to support the trial court's conclusion defendant acted with malice and without justification for his conduct, and this court may not properly reduce the degree of the offense to voluntary manslaughter.

Defendant also contends the trial court abused its discretion by sentencing him to 40 years' imprisonment, arguing that his prior criminal record was so minimal the judge stated he would not consider it and, also, that defendant was under the influence of drugs and alcohol when he committed the offense. Defendant requests that we reduce his sentence to 20 years' imprisonment.

At the sentencing hearing the trial judge thoroughly reviewed the requisite sentencing factors as they applied to defendant and the evidence in this case. The evidence was conflicting as to whether defendant was under the influence of intoxicants at the time of the offense. The witnesses who observed him or had conversation with him testified he spoke normally, had no difficulty in walking and did not appear to be intoxicated. Defendant at that time responded to questions and was fully aware of the circumstances of the offense and his conduct.

We conclude the trial court did not abuse its sentencing discretion and may not therefore reduce the sentence imposed. *People v. La Pointe* (1981), 88 Ill. 2d 482, 492, 431 N.E.2d 344; *People v. Perruquet* (1977), 68 Ill. 2d 149, 153, 368 N.E.2d 882.

Accordingly, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

HOPF and UNVERZAGT, JJ., concur.