THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KENNETH W. HANSON, Defendant and Petitioner-Appellant (James Thieret, Respondent-Appellee).

Fifth District   No. 5—83—0806

Opinion filed October 24, 1985.—Rehearing denied November 26, 1985.

Thomas W. Mansfield, of Reed, Heller & Mansfield, of Pinckneyville, for appellant.

Gerald A. Sims, Jr., State's Attorney, of Pinckneyville (Kenneth R. Boyle, Stephen E. Norris, and Raymond F. Buckley, Jr., all of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE HARRISON delivered the opinion of the court:

Defendant, Kenneth W. Hanson, was convicted after a jury trial in the circuit court of Perry County of armed violence and aggravated battery. Defendant was sentenced only on the armed violence conviction, with the court assessing punishment at eight years' imprisonment.

On appeal defendant contends (1) the State failed to prove beyond a reasonable doubt he did not act in self-defense, (2) the court erred in excluding testimony of three defense witnesses regarding prior violent acts of the victim, (3) the court erred in denying his motion in arrest of judgment on the armed violence count, (4) the court erred in ruling defendant could be impeached with prior acts which did not result in convictions for any impeachable offense, (5) the State failed to prove venue, (6) reversible error resulted from several statements by the prosecutor, (7) the court erred in allowing aggravated battery to be used as a predicate felony for the charge of armed violence where no premeditation to use a weapon was involved, (8) the court erred in refusing instructions regarding a victim using force to prevent commission of a forcible felony, (9) the court erred in refusing instructions regarding possible hesitation between shots fired by defendant in self-defense, (10) the court erred in denying defendant's motion for mistrial based upon the State's violation of an order *in limine,* and (11) the court erred in denying a motion for new trial based upon the discovery of new evidence.

Defendant also has appealed an order of the circuit court of Randolph County dismissing his petition for writ of *habeas corpus.* That petition alleged the armed violence charge was void because of double enhancement. This is the same argument made in defendant's third contention.

For the following reasons, we reverse the judgment and sentence for armed violence, reverse the conviction for aggravated battery and remand for further proceedings.

This case arose out of a confrontation at a bar in Willisville on November 26, 1982. George Whitehurst testified he arrived at Mary's Tavern around 7:30 p.m. after having been drinking earlier at another local bar. He entered Mary's Tavern, sat down, and ordered a beer. He asked a woman tending bar if Ken, the defendant, who was an employee of the bar, was around. Whitehurst told the woman, "I wanted to talk to him about why he pulled that shot gun on me a while back." The bartender said she didn't want any trouble, and Whitehurst said he just wanted to talk to defendant.

Whitehurst then went to a game room at the bar. He testified that he exchanged greetings with defendant, then said to him, "Ken, I want to talk to you. Why did you pull that shot gun on me before?" Whitehurst testified that defendant replied, "Did you come here looking for trouble?" Whitehurst said, "No, I just come here to ask you. I never done you any wrong. Why did you pull that shot gun on me?" Defendant replied, "Yeah, you come in here looking for some, and I

can give it to you."

Whitehurst testified that defendant then started toward the bar, and Whitehurst thought he was going for a gun. He grabbed the defendant and they scuffled. Defendant broke free from Whitehurst and went back to the bar. Whitehurst returned to where he had left his beer.

Whitehurst further testified he and defendant later exchanged words when defendant was at a point directly across from where Whitehurst was drinking his beer. Whitehurst said to defendant, "Ken, I guess you know if I ever catch you out of here I am going to whip you for pulling that shot gun on me." Defendant said, "No, what's going to happen is, you are going to keep talking and things are going to get worse here tonight." Whitehurst then testified he told defendant, "No, I didn't think so. Because I thought he was too much of a coward. He wouldn't pull a gun to start off with. And I would whip him like a step-child if I ever caught him out." Whitehurst testified the defendant then said, "Why don't you come back here and do it then." Whitehurst responded, "By God, I can." Defendant said, "Well, do it." Whitehurst replied, "All right."

Then Whitehurst began walking toward an opening with swinging doors in the other end of the bar, with defendant walking toward the doors as well. The two walked parallel to each other, with defendant behind the bar and Whitehurst on the customer side. When Whitehurst got to the opening in the bar, defendant shot him. After the first shot, Whitehurst turned to walk out of the bar, but was shot two more times, the last shot entering him from his back behind his left shoulder.

Whitehurst testified he had no weapon on the night of the confrontation, although he later stated he always carried a knife. He also stated he only intended to hit the defendant, and did not intend to cause any permanent disability. He said he would have hit defendant only once and then stopped if defendant had not resisted.

The foregoing evidence was the testimony of Whitehurst.

Witnesses in the bar confirmed that defendant and Whitehurst had argued and scuffled and that defendant later shot Whitehurst three times. The witnesses gave varying stories about the details of the events prior to the actual shooting. Several witnesses testified they saw no weapon carried by Whitehurst at the time of this incident. However, Shirley Bitner, a waitress at the bar, testified that Whitehurst told defendant he would cut his throat. Venesa Pestka, who also worked at the bar, said she heard Whitehurst say something like he was going to cut defendant's head off. A bar patron, Jacob

Qualls, also said he heard Whitehurst say something about stabbing or cutting up defendant. Other witnesses did not hear these comments.

There was conflicting evidence regarding a hesitation between the three shots. Bar patron Robbie Dintelman and waitress Bitner testified there was no hesitation. Whitehurst's testimony and the evidence of where the shots entered his body indicate at least some hesitation between shots.

Other testimony indicated defendant had told bar employees to call the police before the shooting occurred, and that defendant had told Whitehurst several times to leave the bar prior to the time the shooting occurred. One witness heard defendant say, "Stop or I'll shoot," to Whitehurst, while others did not hear such a warning.

We first address defendant's third issue raised on appeal which is identical to his argument in his *habeas corpus* petition. He contends his motion in arrest of judgment should have been granted because the armed violence charge was based on the predicate felony of aggravated battery by way of use of a deadly weapon. He contends this constituted double enhancement, because a gun was used not only to raise the misdemeanor of battery to the felony of aggravated battery, but also to raise aggravated battery to armed violence.

Defendant relies on *People v. Haron* (1981), 85 Ill. 2d 261, 422 N.E.2d 627, where the court, discussing a charge of armed violence, defined by section 33A–2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1983, ch. 38, par. 33A–2), stated:

"Our review of the language of the statute and the authorities leads us to conclude that the General Assembly did not intend that the presence of a weapon serve to enhance an offense from misdemeanor to felony and also to serve as the basis for a charge of armed violence. In our opinion the requirement of section 33A–2 that there be the commission of a felony while armed with a dangerous weapon contemplates the commission of a predicate offense which is a felony without enhancement by the presence of a weapon." *People v. Haron* (1981), 85 Ill. 2d 261, 278, 422 N.E.2d 627, 634.

In *Haron,* the information charged:

" '[Defendant] while armed with a dangerous weapon, namely a pistol, performed acts prohibited by Chapter 38, Section 12–4(b)(1), Illinois Revised Statutes, in that he committed the felony offense of aggravated battery by causing great bodily harm to ***.' " 85 Ill. 2d 261, 264, 422 N.E.2d 627, 628.

In the present case, the information read as follows:

"[S]aid defendant while armed with a category I dangerous

weapon, a pistol, performed acts prohibited by Illinois Revised Statutes, Ch. 38, Sec. 12—4(b) in that committing a battery, in violation of Illinois Revised Statutes, Ch. 38, Sec. 12—3, he knowingly and without lawful justification caused great bodily harm to George Whitehurst in that he shot George Whitehurst with a pistol ***."

Section 12—4(b)(1) of the Criminal Code of 1961 makes a battery aggravated by use of a deadly weapon. Ill. Rev. Stat. 1983, ch. 38, par. 12—4(b)(1).

■■ We fail to see how this information is in any significant way different from the one found invalid in *Haron.* The State argues the armed violence charge was predicated upon aggravated battery by way of great bodily harm under section 12—4(a) of the Criminal Code of 1961. (Ill. Rev. Stat. 1983, ch. 38, par. 12—4(a).) The State could have charged him with armed violence based upon section 12—4(a), and this would not have constituted double enhancement. (*People v. Decker* (1984), 126 Ill. App. 3d 428, 432, 467 N.E.2d 366, 370.) The State points to the "great bodily harm" language in the information in the present case. But this same language was part of the invalid information in *Haron.* Additionally, our supreme court in *People v. Van Winkle* (1981), 88 Ill. 2d 220, 430 N.E.2d 987, has ruled the decision in *Haron* requires the reversal of judgment of conviction of armed violence after trial in such a case. (See also *People v. Bragg* (1984), 126 Ill. App. 3d 826, 835, 467 N.E.2d 1004, 1008-09.) An indictment which does not charge an offense is subject to dismissal at any time, and the conviction and sentence for armed violence must be reversed. *People v. Gresham* (1982), 104 Ill. App. 3d 81, 85, 432 N.E.2d 654, 657.

We therefore reverse the judgment and sentence for armed violence. Courts have held that in a case such as this, where a judgment on an armed violence charge is reversed due to double enhancement on the face of the charge, the case should be remanded for sentencing on the predicate aggravated battery conviction. (*People v. Gresham* (1982), 104 Ill. App. 3d 81, 86, 432 N.E.2d 654, 658.) However, because we find reversible error under defendant's allegation of erroneous exclusion of evidence regarding his self-defense theory discussed below, and because self-defense could be a defense to the aggravated battery charge, we must reverse the aggravated battery conviction and remand the cause.

■ We now turn to defendant's other issues, in which he first contends the State failed to prove beyond a reasonable doubt that his use of force in self-defense was unreasonable. He alleges that since

Whitehurst admitted he intended to physically assault the defendant, that defendant's use of force could not be unreasonable. He also points to evidence Whitehurst had threatened him.

Section 7—1 of the Criminal Code of 1961 states that a person is "justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another, or the commission of a forcible felony." (Ill. Rev. Stat. 1983, ch. 38, par. 7—1.) Once a defendant has presented some evidence of self-defense, the State has the burden of proving defendant's guilt beyond a reasonable doubt as to that issue. *People v. Woods* (1980), 81 Ill. 2d 537, 542, 410 N.E.2d 866, 868.

There was sufficient evidence for the jury to believe defendant was not acting in self-defense. Whitehurst's statement about hitting defendant until he went down was later qualified by Whitehurst when he said if, after the first punch defendant did not fight back, he would break off the fight. Further, defendant had scuffled with Whitehurst earlier and had broken free of Whitehurst's grasp. Whitehurst stated defendant was stronger than he was. Testimony by some witnesses that Whitehurst threatened to stab defendant was contradicted by other witnesses who heard no such remarks. No one saw Whitehurst with a knife. Meanwhile, it was clear defendant was armed with a gun. There was also evidence defendant invited Whitehurst behind the bar in provocation. Witnesses testified defendant appeared calm and confident throughout the confrontation.

Even if defendant's initial use of force was justified, there was evidence of a hesitation between the three shots fired at Whitehurst. Whitehurst testified that he had time to turn toward the door between the shots. The first two shots struck Whitehurst in the chest while the third entered him from behind. The jury could have believed that the interval between the shots was sufficient to allow defendant to realize no further shooting was necessary. See *In re S.M.* (1981), 93 Ill. App. 3d 105, 110-11, 416 N.E.2d 1212, 1216.

We find there was sufficient evidence for the jury to believe the use of force by the defendant was unreasonable. We cannot say as a matter of law defendant's actions constituted a justifiable response. See *People v. Wickenhauser* (1979), 75 Ill. App. 3d 145, 148, 393 N.E.2d 1185, 1188.

Defendant next contends the court erroneously excluded testimony from witnesses regarding prior violent acts of Whitehurst, the victim. Defendant made an offer of proof, in which he said two witnesses would testify they saw Whitehurst pull a knife and threaten a

person at a tavern. Another witness would have testified Whitehurst threatened him and his wife with a knife when Whitehurst felt the witness had run his car off the road. Defendant also offered to call two witnesses to testify defendant knew of Whitehurst's prior violent acts.

There were two purposes for which the evidence of Whitehurst's prior acts of aggression could be used.

> "One purpose of the testimony may be to show the reasonableness of the defendant's state of mind in acting in self-defense; a second purpose may be to support the defendant's testimony that the [victim] was the aggressor. [Citation.] These distinct purposes serve different functions and carry different requirements as to the defendant's knowledge of the [victim's] character and reputation. [Citation.] When used for the first purpose, the defendant must have known the information concerning the [victim] when the act of self-defense occurred. This requirement is entirely correct, flowing from the subjective use to which the testimony is put—supplying insight into the defendant's state of mind and his beliefs regarding the danger he was in. A requirement that the defendant knew of the [victim's] propensity for violence is unrelated to the second purpose, however. Evidence that the victim was a violent person or committed violent acts helps corroborate the defendant's testimony that the [victim] was the initial aggressor." (*People v. Buchanan* (1980), 91 Ill. App. 3d 13, 16, 414 N.E.2d 262, 264.)

In addition to the purposes noted in *Buchanan,* a victim's prior violent acts could also be used to show the reasonableness of the amount of force used by a defendant. *People v. Gossett* (1983), 115 Ill. App. 3d 655, 666, 451 N.E.2d 280, 287.

The aforementioned principles have been recently applied by our supreme court in *People v. Lynch* (1984), 104 Ill. 2d 194, 200-01, 470 N.E.2d 1018, 1020, where the court found that a victim's convictions for crimes of violence should have been admitted to show the victim was the aggressor regardless of when defendant learned of them.

Defendant's offer of proof consisted of three witnesses who observed Whitehurst's prior acts of violent behavior, and two witnesses who said they had made defendant aware of these acts. Thus, these prior acts were relevant to show defendant's state of mind in acting in self-defense, because defendant had knowledge of them prior to his confrontation with Whitehurst. Moreover, the prior violent acts of Whitehurst were relevant to show who was the aggressor. For this second purpose, it was not necessary defendant knew of the prior

acts.

■ The State recognizes the rules in *Buchanan* and *Lynch,* but argues the testimony offered by defendant would have been cumulative. Whitehurst, on cross-examination, was asked about the two prior incidents where he confronted others with a knife. Whitehurst gave his version of these incidents, and admitted pleading guilty to two aggravated assault charges in connection with these prior occurrences. We cannot say the offered evidence was properly excluded as being cumulative. Up until the time defendant made his offer of proof, the only evidence of Whitehurst's violent character had come from Whitehurst himself. Defendant should have been allowed to present evidence from witnesses who saw these prior acts of Whitehurst. The offer of proof indicated the witnesses' version of Whitehurst's acts was significantly different from the version given by Whitehurst. (See *People v. Hoddenbach* (1983), 116 Ill. App. 3d 57, 61, 452 N.E.2d 32, 35.) We find, therefore, there was prejudicial error in excluding the testimony offered by defendant. His conviction for aggravated battery must be reversed and the cause remanded.

Defendant next claims the court erred in ruling that defendant, if he testified, could be impeached by evidence of prior acts of violence which did not result in conviction for an impeachable offense. Due to our disposition of the case, we do not address this point other than to note that a defendant's prior bad acts cannot be used to show his propensity to commit crime. *People v. Jones* (1985), 105 Ill. 2d 342, 358, 475 N.E.2d 832, 839.

■ Defendant further claims the State failed to prove venue beyond a reasonable doubt. He argues there was no evidence his alleged offenses occurred within Perry County. Venue is a material averment which must be proved beyond a reasonable doubt, and the proof can come from direct or circumstantial evidence. Venue is proved if there is evidence from which it can be inferred the crime was committed within the jurisdiction where the prosecution took place. *People v. Longoria* (1983), 117 Ill. App. 3d 241, 254, 452 N.E.2d 1350, 1359.

There was testimony here that Mary's bar was located on Route 4 in Willisville, but no direct evidence the tavern was in Perry County, where the prosecution took place. Defendant argues that Willisville is bisected by the Randolph-Perry County line, and thus evidence of the bar being in Willisville does not establish it is in Perry County.

■ However, there is circumstantial evidence the tavern is located in Perry County. Two bar employees, including the defendant, who called the police the night of the shooting, called the Perry County sheriff's office each time they called. A deputy sheriff from

Perry County responded and was in charge of the investigation, although officers from another county assisted. The Perry County officer collected and retained the physical evidence of the shooting. Thus there was sufficient circumstantial evidence to prove venue. Further, the court could, as it did, take judicial notice of the location of county boundary lines to determine venue was established. *People v. Luigs* (1981), 96 Ill. App. 3d 700, 702, 421 N.E.2d 961, 963-64.

■ Defendant next contends the court erred in failing to give the jury his instructions No. 4 and No. 12. These instructions sought to tell the jury a person is justified in using deadly force if the person reasonably believes the use of such force is necessary to prevent the commission of a forcible felony.

Illinois Pattern Jury Instruction (IPI), Criminal, No. 24—25.06 (2d ed. 1981), provides that force likely to cause great bodily harm or death is justified to prevent similar harm to oneself or another or to prevent the commission of a forcible felony. The court below instructed the jury on preventing harm to oneself, but refused defendant's request to include the forcible felony language and refused to give defendant's proposed instruction defining forcible felony. Defendant's theory for requesting the proposed instructions was that the forcible felony of aggravated battery was about to be committed upon himself.

This exact argument advanced by the defendant was held to be without merit in *People v. Chamness* (1984), 129 Ill. App. 3d 871, 876, 473 N.E.2d 476, 480, where the court held:

> "The offenses of attempted murder (Ill. Rev. Stat. 1983, ch. 38, pars. 8—4, 9—1) and aggravated battery (Ill. Rev. Stat. 1983, ch. 38, par. 12—4) each require a level of force which is likely to cause great bodily harm or death. When a jury determines whether a defendant acted to protect himself from great bodily harm or death, it necessarily considers the same evidence which would be involved in a determination of whether that defendant acted to prevent the commission of an attempted murder or aggravated battery upon himself. There is no logic in the suggestion that a jury which found that a defendant was not protecting himself from great bodily harm or death could find that that defendant was trying to prevent an attempted murder or aggravated battery from being committed upon himself. Defendant received the jury's informed consideration of his theory of self-defense; any error in the circuit court's refusal to give the instructions requested by defendant was harmless."

Thus, defendant's argument is without merit.

Defendant also claims error in the court's refusal to give his instructions No. 13 and No. 14. Defendant's offered instruction No. 13 read:

> "If you accept the proposition that the accused was initially justified in firing, then the State must establish beyond a reasonable doubt that any interval between the first shot and the subsequent shots was sufficient to allow the accused, acting as a reasonable man, to realize that no further shooting was necessary."

This instruction is not found in IPI. Defendant asserts it was a proper statement of the law as found in *In re S.M.* (1981), 93 Ill. App. 3d 105, 110-11, 416 N.E.2d 1212, 1216. However, defendant cites no case requiring the giving of such an instruction.

Supreme Court Rule 451(a), in pertinent part, states:

> "Whenever IPI-Criminal does not contain an instruction on a subject on which the court determines that the jury should be instructed, the instruction given on that subject should be simple, brief, impartial, and free from argument." (87 Ill. 2d R. 451(a).)

The decision whether to give a non-IPI instruction is within the discretion of the trial judge (*People v. Sanchez* (1982), 110 Ill. App. 3d. 893, 903, 443 N.E.2d 252, 259), and this discretion is abused if the refusal to give a non-IPI instruction results in the jury not being instructed as to a defense theory of the case which is supported by some evidence. *People v. Hendricks* (1975), 32 Ill. App. 3d 49, 52, 335 N.E.2d 521, 524.

■ Here, the jury was clearly instructed on defendant's theory of self-defense. The self-defense instructions given were totally consistent with defendant's theory of the case. (See *People v. Jackson* (1974), 22 Ill. App. 3d 873, 880, 318 N.E.2d 249, 254.) We can find no abuse of discretion in the court's refusal to give this non-IPI instruction.

■ We likewise find no abuse of discretion in the court's refusal to give defendant's instruction No. 14, which read:

> "It is not necessary that the assailant have a deadly weapon in order to justify the use of a deadly weapon in self defense."

A similar instruction was offered in *Jackson*, with the appellate court finding no abuse of discretion in the trial court's refusing it. Here, as in *Jackson*, the self-defense instructions given to the jury said nothing about the assailant having a deadly weapon. The instructions given to the jury were sufficient in presenting defendant's theory of the case.

We have reviewed defendant's remaining issues raised on appeal and have determined them to be without merit or unlikely to arise upon remand.

Due to our disposition of defendant's direct appeal, we do not address his appeal from the dismissal of his *habeas corpus* petition, in which his only allegation dealt with the armed violence charge.

For the foregoing reasons, the conviction and sentence of the circuit court of Perry County for armed violence are reversed, the conviction for aggravated battery is reversed, and the cause remanded.

Reversed in part, reversed and remanded in part.

JONES, P.J., and KASSERMAN, J., concur.