178 Ill. App.3d 470 (1988)
533 N.E.2d 84
In re D.N., a Minor (The People of the State of Illinois, Petitioner-Appellee,
v.
D.N., a Minor, Respondent-Appellant).
No. 87-0896.
Illinois Appellate Court  First District (1st Division).
Opinion filed December 27, 1988.
*471 Randolph N. Stone, Public Defender, of Chicago (Ruth McBeth, Assistant Public Defender, of counsel), for appellant.
Richard M. Daley, State's Attorney, of Chicago (Inge Fryklund, Paula Carstensen, and Nancy Nolan Colletti, Assistant State's Attorneys, of counsel), for the People.
Judgment affirmed.
JUSTICE O'CONNOR delivered the opinion of the court:
Respondent D.N. and corespondent S.P., minors, were brought before the juvenile court and charged with aggravated battery (Ill. Rev. Stat. 1987, ch. 38, par. 12-4(b)) after they allegedly attacked school teacher Linda Neusome. S.P. was acquitted. D.N. was adjudicated delinquent and sentenced to one year's probation. D.N. appeals. For the reasons below, we affirm.
Events leading to the fight between Linda Neusome and D.N. are undisputed. On March 25, 1986, Ms. Neusome was engaged in her duties as a teacher at Aldridge Elementary School in Chicago, when she was asked by a colleague, Mr. Davis, to retrieve some girls from a bathroom. In the bathroom, Ms. Neusome found students S.P. and D.N. Ms. Neusome asked the girls if they were "in Mr. Davis' class." D.N. replied that they were not. Ms. Neusome asked to see the girls' required hall passes, but they had none.
Ms. Neusome escorted the girls from the bathroom. In the hallway, S.P. separated from Ms. Neusome and D.N., but remained nearby. Ms. Neusome and D.N. walked to the door of Mr. Davis' classroom, *472 where Ms. Neusome spoke briefly with Mr. Davis. The discussion was not detailed in the record, but evidently was to the effect that D.N. and S.P. were not the students Mr. Davis sought. Davis then returned to his classroom and shut the door. Ms. Neusome asked D.N. why she had lied about being in Mr. Davis' class. D.N. replied that at the time she had answered, she was not in Mr. Davis' room, but in the bathroom, noting for Ms. Neusome the difference.
Ms. Neusome began to take D.N. to the principal's office, when another teacher, Ms. Wooten, and her students, entered the hallway to go to lunch. D.N. asserted that she and S.P. were supposed to be with Ms. Wooten. Ms. Wooten told Ms. Neusome that the girls were supposed to help her later in the day, but did not belong with her at that time. Ms. Neusome stated, "[T]hey lied to me. From their behavior, I don't think they should be allowed to help."
Subsequent events are sharply disputed. According to Ms. Neusome, D.N. struck her in the face without provocation, knocking her to one knee, and continued hitting her for 45 to 60 seconds, while S.P. and two other unidentified students held her. According to D.N., Ms. Neusome grabbed her by the arm and she jerked away, and this occurred three times. While the grabbing and jerking continued, D.N. claimed, Ms. Neusome accused her of being the ringleader of all the "dumb and stupid students," and threatened to hit her. D.N. claimed that Ms. Neusome then indeed hit her, and that she hit back in an attempt to defend herself, pushing Ms. Neusome to a sitting position on the floor. D.N. stated that they continued to fight until separated.
The incident was witnessed by Ms. Wooten, who called Ms. Neusome from the fight. The incident was also witnessed by about 20 to 30 of Ms. Wooten's students, including D.N.'s sister Antoinette and Tukaya Evans, both of whom helped pull D.N. away from Ms. Neusome. After the fight stopped, Ms. Neusome declared her intent to press charges and went to the principal's office. Investigations of the incident were conducted by the principal, Mr. Kriss Stutzman, and Chicago police department youth officer Daniel Grzyb.
At trial, Ms. Neusome and D.N. testified to their versions of events. S.P. corroborated D.N.'s version, adding that she, S.P., did not touch Ms. Neusome and had pulled D.N. away from Ms. Neusome. D.N.'s sister, Antoinette, corroborated D.N.'s version of events. Tukaya Evans corroborated D.N.'s version, adding that she heard no name calling, and that while she saw Ms. Neusome hit D.N. just once, D.N. hit Ms. Neusome many times. Ms. Wooten testified that immediately after the incident, she told Mr. Stutzman she did not want to be involved and testified at trial that she did not know what happened.
*473 Mr. Stutzman, who did not witness the fight, testified that when Ms. Neusome came to his office, he began to investigate immediately. Mr. Stutzman testified that Ms. Neusome had a reputation for using corporal punishment on students, but that he had never witnessed such punishment. A counselor in the school, Ms. Sherrie Johnson, testified that she had interviewed 14 students who had witnessed the fight between Ms. Neusome and D.N., and none mentioned that Ms. Neusome struck the first blow.
Officer Grzyb testified that he had interviewed D.N. at the police station, after informing her of her rights. Officer Grzyb testified that in her statement, D.N. stated that Ms. Neusome had "waved a hand in [her] face." Police officer Ray Ward, who was present when Officer Grzyb interviewed D.N., corroborated Grzyb's testimony. S.P. would not talk to the police.
After the trial, the court discharged S.P., finding that she had not touched Ms. Neusome. The court ruled D.N. delinquent for committing aggravated battery. The trial court found that D.N.'s words and actions demonstrated a willingness to force the action, and that her conduct was never passive or conciliatory. Noting that students have a responsibility to accept the authority of teachers while at school, the trial court further found that although D.N. may arguably have acted in self-defense, she continued and became the aggressor, using unjustified force. The court sentenced D.N. to one year of juvenile probation. D.N. appeals, arguing that the State failed to prove beyond reasonable doubt that D.N. did not act in self-defense, and that the trial court made mistakes of law concerning a nonaggressor's duty to retreat and the refusal to admit evidence of Ms. Neusome's violent character and reputation.
At trial, the parties focussed primarily on whether D.N. or Ms. Neusome threw the first punch. The trial court, however, did not issue a finding concerning who started the fight, although it did state that Ms. Neusome's testimony was persuasive. While the evidence conflicted as to who struck the first blow, the evidence clearly showed that D.N. hit Ms. Neusome many times. Thus, the trial court ruled that D.N. had committed aggravated battery, not because she struck first, but because she continued to fight beyond the point reasonably necessary to defend herself. Examination of the record and the applicable law shows that the trial court ruled correctly.
D.N. first argues that the State failed to meet its burden to prove beyond reasonable doubt that D.N. did not act in self-defense. D.N. contends that the evidence established that Ms. Neusome was the aggressor and that the trial court found D.N. on the defense initially. *474 With respect to the finding that D.N. continued hitting Ms. Neusome, D.N. argues that if self-defense was justified, the State failed to meet its burden to show an interval between the first, justified, use of force, and a subsequent, unjustified, use of force. (See People v. Bailey (1975), 27 Ill. App.3d 128, 134, 326 N.E.2d 550; In re S.M. (1981), 93 Ill. App.3d 105, 416 N.E.2d 1212.) The State maintains that D.N. was the initial aggressor, pointing to the evidence supporting their position.
 1 The issue of who started the fight, however, is irrelevant. The trial court ruled that by continuing to strike Ms. Neusome, D.N. negated any privilege of self-defense. Further, a cessation in hostilities is not necessary to show an interval between justified and unjustified use of force. The privilege of self-defense is negated where a person continues to use force beyond a point where, acting as a reasonable man, he would realize that further force is no longer necessary. This is true even where the action is continuous. E.g., People v. Hanson (1985), 138 Ill. App.3d 530, 485 N.E.2d 1144, appeal denied (1986), 111 Ill.2d 591.
 2 The evidence established that Ms. Neusome fell or went to her knees after D.N. struck her and that D.N. continued to strike. Once Ms. Neusome was down, D.N. could reasonably have judged that Ms. Neusome was no longer in a position to take the offensive against D.N., who by all accounts matched or surpassed her physically, and that the use of force was no longer necessary. Nevertheless, D.N. continued to strike Ms. Neusome. The evidence showed beyond reasonable doubt that, regardless of D.N.'s motives or justification for striking Ms. Neusome in the first place, she continued her aggression beyond the reasonable need for self-defense.
 3 D.N. next argues that the adjudication of delinquency was based on the trial court's erroneous belief that a nonaggressor must retreat. The State reasserts that D.N. initiated the conflict by "lying and speaking disrespectfully to [Ms. Neusome]," arguing that a defendant may not claim self-defense where the conflict arose from the defendant's own aggressive conduct. (People v. Echoles (1976), 36 Ill. App.3d 845, 344 N.E.2d 620.) Notwithstanding the dubious proposition that harsh language alone constitutes aggressive conduct, the record shows that the trial court did not rely on a mistaken belief that a nonaggressor has a duty to retreat.
In its ruling, the trial court stated:
"[T]he evidence reveal[ed] that [D.N.] could have withdrawn herself from the affray, and in doing so, absolved herself from legal responsibility * * *. Although one can argue that [D.N.] *475 was defending herself initially, * * * it is clear that she became the aggressor and used excessive force and is therefore responsible for the legal consequence of her actions."
The parties dispute whether the trial court's words indicated a finding that D.N. originally acted in self-defense, but the statement makes clear that the trial court imposed no duty to retreat. Rather, the trial court found that D.N., faced with a choice between withdrawing from the conflict and continuing as the aggressor, chose to become the aggressor. A nonaggressor has no duty to retreat, but he does have a duty not to become the aggressor. People v. McGraw (1958), 13 Ill.2d 249, 149 N.E.2d 100; People v. Estes (1984), 127 Ill. App.3d 642, 649, 469 N.E.2d 275; People v. Bailey (1975), 27 Ill. App.3d 128, 326 N.E.2d 550.
D.N. also argues that the trial court erroneously refused to admit evidence concerning Ms. Neusome's reputation for violence and concerning the school system's policy concerning corporal punishment. Neither issue was properly preserved for appeal, however; both are, therefore waived. (See People v. Huckstead (1982), 91 Ill.2d 536, 543, 440 N.E.2d 1248; People v. Travis (1988), 170 Ill. App.3d 873, 525 N.E.2d 1137.) Even were the issues considered, D.N. would not prevail.
 4, 5 D.N. argues that the trial court erroneously refused to allow evidence concerning Ms. Neusome's reputation for violence, including character testimony, testimony of specific prior acts of violence towards students, and testimony concerning an alleged commission of a felony. Evidence of a victim's violent character may support a theory of self-defense by showing the defendant's perception of and reaction to the victim's behavior, and by supporting the defendant's theory that the victim was the aggressor. (People v. Lynch (1984), 104 Ill.2d 194, 199-200, 470 N.E.2d 1018.) The evidence that was offered of Ms. Neusome's violent character, however, could serve neither purpose.
The evidence was offered through Tukaya Evans and Mr. Stutzman. D.N. did not testify concerning her understanding of Ms. Neusome's reputation. The evidence by witnesses, and not the defendant, could not explain the defendant's state of mind. Further, the evidence offered would not have established Ms. Neusome's propensity for violence. Neither Evans nor Stutzman had personal knowledge of any specific prior acts that would have shown Ms. Neusome's alleged pre-disposition for violence. Moreover, given the trial court's ruling, which was based on the finding that D.N. continued the fight, the issue of who was the original aggressor was irrelevant. The trial court properly *476 refused to admit the evidence.
 6 D.N. also argues that the trial court improperly refused to admit evidence concerning the school system's policy of corporal punishment, evidence that D.N. asserts was necessary to show that she was justified in defending herself, rather than submitting to Ms. Neusome's attack, because Ms. Neusome's actions were not reasonable under the school system's policy. Section 6-21 of the Rules of the Board of Education of the City of Chicago, which governs the use of corporal punishment, was submitted to this court in a motion to cite supplemental authority, but does not aid D.N.'s argument. The question before this court is not one of fact, but rather whether the trial court's refusal to admit evidence concerning the school system's corporal punishment policy was clearly erroneous. The trial court ruled that evidence of the school system's corporal punishment policy was irrelevant because the finding of delinquency was predicated, as stated, not on who started the fight, but on the fact that D.N. continued beyond the point where her actions could have been justified. The court did not err, therefore, in refusing to admit evidence concerning the school system's corporal punishment policy.
 7 In summary, the trial court did not rely on conflicting testimony of who threw the first punch. Rather, the trial court relied on the uncontroverted testimony that D.N. continued the fight beyond the point where violence was reasonably necessary for self-defense and became the aggressor. In doing so, D.N. negated any justification for acting in self-defense at the outset. Further, although D.N. waived review of the evidentiary rulings, it is clear that the trial court properly refused to admit irrelevant testimony. The trial court's adjudication of delinquency for committing aggravated battery is affirmed.
Affirmed.
BUCKLEY and QUINLAN, JJ., concur.