THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GEORGE WILLIS, Defendant-Appellant.

First District (5th Division)   No. 1—87—1846

Opinion filed March 1, 1991.

380

Randolph N. Stone, Public Defender, of Chicago (Elyse Krug Miller, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Inge Fryklund, William D. Carroll, and Eileen Rubin, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McNULTY delivered the opinion of the court:

Following a bench trial, defendant George Willis was found guilty of voluntary manslaughter and sentenced to 10 years in the Department of Corrections. The issues raised on appeal are: (1) whether the State failed to prove that defendant did not act in self-defense; (2) whether the trial court erred when it allowed a victim impact statement to be introduced at defendant's sentencing hearing; (3) whether in sentencing defendant, the court improperly considered as an aggra-

vating factor that defendant's conduct resulted in the taking of a life; (4) whether the court's reliance on the statutory aggravating factor that the crime was brutal and heinous was proper where defendant received a nonextended sentence; (5) whether the trial court failed to consider mitigating evidence; and (6) whether the trial court erred in denying probation.

Defendant George Willis was employed as a doorman at Pepper Plums Restaurant and Bar. Lee Cummings was the head of security at Pepper Plums, and in charge of hiring, firing and scheduling employees' working hours. On April 27, 1986, Cummings informed defendant that he was reducing defendant's hours. An argument ensued, and when it became physical, the owner of Pepper Plums separated the men. Defendant then informed co-employees and customers that he knew some "shady characters" who would take care of Cummings.

On April 28, 1986, defendant asked Cummings to reconsider his decision to reduce defendant's hours. When Cummings refused, defendant began swearing and insulting Cummings. Cummings then told defendant that he was going to clock defendant out for the evening and walked into the kitchen. Defendant followed Cummings into the kitchen and a fight again ensued. According to defendant, Cummings grabbed a knife and thrust it at defendant. The men struggled for possession of the knife. Defendant gained control of the knife and stabbed Cummings in the chest. Defendant then stabbed Cummings 10 more times, and Cummings died from multiple stab wounds.

Defendant's first contention on appeal is that his conviction should be reversed because the State failed to prove that he was not acting in self-defense when he fatally stabbed Cummings. Although the trial court found that defendant acted in self-defense when he stabbed Cummings the first time, the court found defendant guilty of voluntary manslaughter because: (1) he failed to retreat although there were three exits and (2) he unreasonably believed that the 10 subsequent stab wounds were justified.

Defendant maintains that the court improperly considered defendant's failure to retreat. As defendant points out, a nonaggressor is under no duty to retreat from a place where he has a right to be before employing force to protect himself. (*In re D.N.* (1988), 178 Ill. App. 3d 470, 475, 533 N.E.2d 84; *People v. Estes* (1984), 127 Ill. App. 3d 642, 649, 469 N.E.2d 275, 281.) This being the case, the court must reverse the trial court's determination unless it concludes that defendant's conduct in stabbing defendant 10 additional times was not justified as necessary self-defense.

Defendant contends that the trial court erred in concluding that defendant was unjustified in the amount of force used. Defendant contends that where the initial use of force is justified, the claim of self-defense is not necessarily negated because several wounds were inflicted after the attack. To support his contention that subsequent wounds do not negate self-defense, defendant relies on *In re S.M.* (1981), 93 Ill. App. 3d 105, 416 N.E.2d 1212, and *People v. Shipp* (1977), 52 Ill. App. 3d 470, 367 N.E.2d 966. In *Shipp*, the court noted that deadly force is generally unjustified where the aggressor has been disabled or disarmed. The court, nonetheless, declined to "mechanically" apply the general rule based upon the particular facts of the case, specifically that the defendant had been shot, beaten, assaulted and threatened by the decedent and was aware of the fact that the decedent had killed his first wife. Thus, the court in *Shipp* concluded that, in light of these circumstances and the fact that the decedent continued to advance upon the defendant even after the defendant began firing at him, defendant was justified in firing subsequent shots. (*Shipp*, 52 Ill. App. 3d at 476.) Similarly, in *In re S.M.*, the evidence showed that defendant tried to avoid a confrontation with four boys who were advancing toward him, but even after they were shot, the boys continued to advance on the defendant. Thus, under the circumstances, the court found that it was reasonable for the defendant to believe that he was still in danger and to continue firing shots at the boys. *In re S.M.*, 93 Ill. App. 3d at 110.

In response, the State contends that in the present case, the use of force cannot be justified as self-defense since Cummings had indeed been both disabled and disarmed. The State cites *People v. Chatman* (1981), 102 Ill. App. 3d 692, 430 N.E.2d 257, in support of this argument. In *Chatman*, after the victim struck the defendant with a board, the victim dropped the board, and was left empty-handed. The defendant, nevertheless, repeatedly stabbed the victim, who attempted to retreat and repel the defendant. The court upheld the jury's finding of voluntary manslaughter in light of the fact that the defendant repeatedly stabbed the victim even after the victim no longer presented any danger to the defendant. (*Chatman*, 102 Ill. App. 3d at 700; see also *In re D.N.* (1988), 178 Ill. App. 3d 470, 474, 533 N.E.2d 84 (defendant continued her aggression beyond the reasonable need for self-defense where defendant continued to strike the victim after the victim fell to her knees and was no longer in a position to take the offensive); *People v. Zolidis* (1983), 115 Ill. App. 3d 669, 450 N.E.2d 1290 (court rejected defendant's claim of self-defense where the evidence showed that he had stabbed the victim 17 times

while the victim was disabled and falling to the ground); *People v. Ingram* (1983), 114 Ill. App. 3d 740, 743, 449 N.E.2d 564 (defendant's conduct was not justified as necessary self-defense where defendant stabbed the victim 25 times after the victim had been disarmed).

The State contends that, like *Chatman*, the defendant used deadly force after it was no longer necessary. Even if the initial stab was justified, the State maintains that defendant continued stabbing Cummings after he was disabled and disarmed. Defendant's own testimony was that after he first stabbed Cummings in the chest, Cummings turned away, counterclockwise, from defendant. Therefore, the State maintains that in light of this evidence, regardless of defendant's justification for stabbing Cummings in the first place, defendant continued his aggression beyond the reasonable need for self-defense.

Defendant further contends that the claim of self-defense is only negated where the State proves that the interval between the initial stab wound and the subsequent wounds was sufficient to allow a reasonable person to realize that no further stabbing was necessary. In *Shipp*, the court determined that shots fired after a peril has ceased to exist do not negate a self-defense claim if the shots are fired in the space of a few seconds where one is under great stress and has been pursued by one intent on doing great bodily harm. As the court emphasized, the person attacked is not expected to use infallable judgment. (*Shipp*, 52 Ill. App. 3d at 477.) Similarly, in *People v. Bailey* (1975), 27 Ill. App. 3d 128, 135, 326 N.E.2d 550, the court stated that "[w]hen it has been found that a defendant was initially firing in self-defense, courts have been reluctant to find that a span of only a few seconds was a sufficient time for the defendant to realize that further shooting was unnecessary." In *Bailey*, since the evidence indicated that no more than about two seconds had elapsed between defendant's first and last shot, the court concluded that there was an insufficient interval between the time the shots were fired to allow the defendant to realize that he was no longer in danger. (*Bailey*, 27 Ill. App. 3d at 136.) Likewise, the court in *In re S.M.* concluded that where the evidence was that several shots were fired in rapid succession, there was an insufficient interval between shots which would have allowed defendant to realize that further shots were not necessary. *In re. S.M.*, 93 Ill. App. 3d at 111.

In contrast to the cases cited by defendant, the court in *People v. Hanson* (1985), 138 Ill. App. 3d 530, 485 N.E.2d 1144, upheld the jury's finding that the interval between firing the three shots was sufficient to allow defendant to realize that no further shooting was neces-

sary. In reaching this conclusion, the court was influenced by evidence that between his firing of three shots, the defendant hesitated and turned to the door. Moreover, in *People v. Adams* (1979), 71 Ill. App. 3d 70, 75, 388 N.E.2d 1326, the court determined that an interval of 1½ to 2 minutes between the firing of the first shot and subsequent shots was sufficient to allow defendant to realize that she was no longer in danger and that the subsequent shots were therefore unnecessary.

It should be noted that the appellate court will not disturb the trial court's determination as to whether a killing is justified as necessary self-defense unless it is so unreasonable, improbable or unsatisfactory as to raise a reasonable doubt of defendant's guilt. (*People v. Evans* (1981), 87 Ill. 2d 77, 86, 429 N.E.2d 520; *People v. Ingram* (1983), 114 Ill. App. 3d 740, 743, 449 N.E.2d 564.) The record in the case at bar contains sufficient evidence from which to conclude that defendant continued his aggression beyond the reasonable need for self-defense. Subsequent wounds do not necessarily negate a claim of self-defense where the victim continues to present a danger to the defendant. That is simply not the case here. Even if defendant acted in self-defense in stabbing Cummings the first time, he acted unreasonably in stabbing Cummings 10 more times after Cummings was injured, unarmed and turning away from defendant. Defendant continued stabbing Cummings even after Cummings screamed for help and pleaded with defendant to stop. Furthermore, the fact that Cummings was stabbed in the back four times indicates that he was not continuing to advance upon defendant.

Moreover, even if, as witnesses testified, only 15 to 20 seconds had passed between the infliction of the first stab wound and the completion of the subsequent stabbings, it was not unreasonable for the trial court to conclude that this was a sufficient interval for defendant to realize that he had sole control of the knife, that Cummings was unarmed and that Cummings was seriously wounded. Inflicting 11 stab wounds in 15 to 20 seconds is different from firing two or three gun shots in rapid succession within two seconds. Consequently, the evidence in this case is not so unreasonable as to raise a doubt as to defendant's guilt, and defendant's conviction for voluntary manslaughter is therefore affirmed.

Defendant next contends the trial court improperly considered a victim impact statement in imposing his sentence. Defendant maintains that the introduction of the impact statement was improper because: (1) victim impact statements are highly prejudicial and inflammatory and (2) victim impact statements may only be introduced

by "victims." The State responds that defendant waived these objections by failing to raise them at the sentencing hearing. Our courts have recently determined that objections to victim impact statements are waived if not raised at the defendant's noncapital sentencing hearing. *State v. Forbes* (1990), 205 Ill. App. 3d 851, 563 N.E.2d 860 (since defendant made no objection at the sentencing hearing to the statement of victim's nephew, who was not a "victim," any objection was waived); *People v. Lybarger* (1990), 198 Ill. App. 3d 700, 703; 555 N.E.2d 1264 (objection to victim impact statement by a therapist who was not a "victim" was waived since it was not objected to at defendant's sentencing hearing).

■ Even assuming *arguendo* that the issue was preserved for review, the introduction of the victim impact statement at defendant's noncapital sentencing hearing was not improper. In *Booth v. Maryland* (1987), 482 U.S. 496, 96 L. Ed. 2d 440, 107 S. Ct. 2529, the Supreme Court held that it was constitutionally impermissible to introduce into evidence a victim impact statement at the sentencing phase of a capital murder trial. In the case at bar, defendant urges the court to adopt *Booth* and apply it to sentencing in a noncapital case. The Illinois Supreme Court, however, has recently held that victim impact statements do not violate a defendant's constitutional rights in noncapital cases. (*People v. Felella* (1989), 131 Ill. 2d 525, 546 N.E.2d 492; *People v. Turner* (1989), 128 Ill. 2d 540, 539 N.E.2d 1196.) Similarly, in *Booth,* the Supreme Court stated that facts about the victim and family may be relevant in a noncapital criminal trial. *Booth,* 482 U.S. at 507-08 n.10, 96 L. Ed. 2d at 451 n.10, 107 S. Ct. at 2535 n.10.

■ Defendant further contends that the trial court improperly considered the impact statement since it was authored by Lewis Stavropolous, Cummings' cousin, rather than by a "victim." Where a defendant has been convicted of a violent crime, the victim may address the court regarding the impact which the defendant's criminal conduct had upon the victim. (Ill. Rev. Stat. 1987, ch. 38, par. 1406.) The legislature has defined a victim as the spouse, parent, child or sibling of the person killed. (Ill. Rev. Stat. 1987, ch. 38, par. 1403(a)(3).) Since Stavropolus is not a victim as defined by statute, he should not have been permitted to introduce the victim impact statement. Any error in the presentation of this statement, however, was harmless, particularly since the statement was presented to a judge, rather than to a jury.

Defendant contends that the trial court improperly considered that defendant's conduct resulted in the taking of a life. Defendant relies on *People v. Saldivar* (1986), 113 Ill. 2d 256, 272, 497 N.E.2d

1138, to support his argument. In *Saldivar*, the court, in sentencing defendant, stated that the primary statutory factor in aggravation was the terrible harm the defendant caused the victim and then remarked that the victim was dead. In concluding that the trial court erred, the supreme court explained that in a prosecution for manslaughter, it is improper for a sentencing court to consider the victim's death in applying the aggravating factor that defendant caused serious bodily harm to the victim because death is implicit in the offense of manslaughter and the legislature took death into account when it established the penalties for the crime. The court in *Saldivar* did, however, note that it would have been proper to consider as aggravating factors the force employed and the physical manner in which the victim's death was brought about. *Saldivar*, 113 Ill. 2d at 271.

The court in *People v. Bennett* (1987), 159 Ill. App. 3d 172, 185, 511 N.E.2d 1340, however, stated that the trial court's perfunctory observation that the defendant "has murdered a person" or the trial court's simple acknowledgment that the victim died does not establish that the trial court improperly considered death as an aggravating factor. Similarly, in *People v. McPherson* (1985), 136 Ill. App. 3d 313, 317, 483 N.E.2d 592, the court stated that "it is unrealistic to suggest that the judge in sentencing the defendant must avoid mentioning the fact that someone has died or risk committing reversible error."

Moreover, *Saldivar* has recently been applied in varying factual settings. *People v. Johnson* (1990), 206 Ill. App. 3d 542 (no error where the trial court made passing reference to victim's death and trial court did not place undue emphasis on his demise and did not establish that the court considered his death as an aggravating factor); *People v. Colclasure* (1990), 200 Ill. App. 3d 1038, 1046, 558 N.E.2d 705 (no error where the court recognized that death was an element inherent in voluntary manslaughter, did not give the death undue influence, and directed its comments to the manner in which the death was inflicted); *People v. Smith* (1990), 195 Ill. App. 3d 878, 884, 552 N.E.2d 1061 (error where the court considered victim's death to be a major aggravating factor in defendant's sentence and the court was concerned not with the manner in which the death was brought about but with the fact that the end result of defendant's conduct was the loss of life); *People v. Verser* (1990), 200 Ill. App. 3d 613, 558 N.E.2d 226 (no error or, at most, harmless error where the court simply mentioned that the victim had died and considered the circumstances surrounding the murder); *People v. Rose* (1989), 191 Ill. App. 3d 1083, 1097-98, 548 N.E.2d 548 (no error where the court stated that the

killing was without justification but stated that its decision was not based on the fact that the killing was without justification); *People v. Moore* (1988), 178 Ill. App. 3d 531, 533 N.E.2d 463 (error where judge stated that the defendant's conduct caused the most serious fatality).

In the case at bar, the trial court stated:

"As aggravation of course, I must consider what happened, the nature of the occurrence and the seriousness of the harm; and I'm sure there's no disagreement that the harm in this case is the most serious type, the taking of a life."

The court then discussed the factors in mitigation and sentenced defendant to 10 years in prison in order to "make whatever amendment [*sic*] he can make for the taking of this life."

In light of the cases discussed above, and the plain language of the trial judge's comments before sentencing defendant, one might reasonably infer that the court improperly considered as an aggravating factor that defendant's conduct resulted in the taking of a life. The trial judge did more than simply state that someone had died. Rather, she stated that in aggravation she must consider that defendant caused the most serious type of harm, the taking of a life. Although the State maintains that the trial judge merely focused on the physical manner used to commit the crime, this is simply not the case.

A sentence based on improper factors, such as death as an aggravating factor, when implicit in the offense, cannot be affirmed unless we can determine that the weight placed on such an improperly considered aggravating factor was so insignificant as to not lead to a greater sentence. (*People v. Colclasure* (1990), 200 Ill. App. 3d 1038, 1046, 558 N.E.2d 705; *People v. Martin* (1988), 119 Ill. 2d 453, 458, 519 N.E.2d 884, 886.) The trial judge explicitly considered as an aggravating factor that defendant's conduct resulted in the taking of a life, a factor implicit in voluntary manslaughter. It cannot be said that the weight placed on this factor was so insignificant that it did not lead to a greater sentence. Rather, we are convinced that the trial judge imposed the 10-year sentence based on the aggravating factor that defendant's conduct resulted in the taking of a life. Accordingly, the 10-year sentence is vacated and remanded for resentencing.

Defendant contends that the trial court also improperly relied on the statutory aggravating factor that defendant's conduct was brutal and heinous in determining defendant's nonextended-term sentence. Defendant relies on *People v. Killen* (1982), 106 Ill. App. 3d 65, 435 N.E.2d 789, in arguing that defendant's 10-year sentence should be vacated. In *Killen*, the trial court made a finding that the offense

involved brutal and heinous behavior. A finding of brutal and heinous behavior is a factor to be considered in imposing an extended sentence. (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3.2(b)(2).) The court in *Killen* held that a court may only consider whether an offense involved brutal and heinous behavior when imposing an extended-term sentence. *Killen*, 106 Ill. App. 3d at 67.

Defendant's argument is meritless, however, since *Killen* has been overruled by *People v. Compton* (1990), 193 Ill. App. 3d 896, 550 N.E.2d 640. In *Compton*, the court concluded that nothing in the sentencing code prevents courts from assessing the brutal character of an offender's conduct in the commission of a crime when evaluating a nonextended term. Instead, the court explained, section 5—5—3.2 allows courts to impose extended terms only when certain aggravating factors are found. The fact that section 5—5—3.2 sets forth aggravating factors does not prohibit the consideration of such factors in imposing nonextended terms. (*Compton*, 193 Ill. App. 3d at 901.) Likewise, this court found in *People v. Williams* (1987), 159 Ill. App. 3d 527, 512 N.E.2d 35, that nothing in the sentencing code explicitly prohibits the trial court from assessing the brutal character of defendant's conduct in the commission of a crime when considering a nonextended term.

Defendant next contends that his sentence should be reduced since the trial court failed to consider mitigating factors. He maintains that the court considered only defendant's criminal background, and while the court stated that it was required to consider defendant's attitude and likelihood of his conduct recurring, it never did.

■■ ■ As the State points out, where mitigation evidence is before the court, it is presumed that the sentencing judge considered the evidence, absent some indication, other than the sentence imposed, to the contrary. (*People v. Baker* (1983), 114 Ill. App. 3d 803, 811, 448 N.E.2d 631; *People v. Fugitt* (1980), 87 Ill. App. 3d 1044, 1046, 409 N.E.2d 537.) In the present case, the trial judge stated:

> "In mitigation, I must consider the defendant's background and he has none prior to this event. Whether his conduct is likely to reoccur, his attitude, the affects [*sic*] of the sentence on the defendant ***. ***
>
> \* \* \*
>
> I'll not sentence him to the maximum sentence available given his background and what I see as his potential for rehabilitation and his youth and the potential years ahead of him."

Moreover, other mitigated evidence was presented at defendant's sentencing hearing, including 29 letters supporting defendant's good

390

character and defendant's own statement regarding his remorse. Thus, since there is no evidence to the contrary, it is presumed that the trial judge properly considered mitigating evidence.

Accordingly, we affirm defendant's conviction for voluntary manslaughter. However, we vacate defendant's 10-year sentence and remand for resentencing for the reasons set forth above. Since a new sentencing hearing is required, we find it unnecessary to address defendant's final contention that the trial court erred in denying defendant probation.

Affirmed in part; vacated in part and remanded for resentencing.

LORENZ, P.J., and MURRAY, J., concur.